———O———

CITY OF ST. CHARLES, Appellant, *vs.* WILLIAM MEYER, Respondent.

1. *Corporations, municipal—Ordinance—Disturbing the peace—"Charivari."* —A city ordinance providing that "every person who shall willfully disturb the peace * * * by loud or unusual noise, by blowing horns, trumpets or other instruments, * * * or by any other device or means whatsoever, * * * shall be deemed guilty of a misdemeanor," is not violated by parties engaging in a "charivari," unless the effect is to disturb the peace and quiet of the citizens or some of them.

2. *Ordinance—Disturbing the peace—Evidence—Defense.*—In a prosecution for disturbance of the peace, testimony to the effect that the peace of certain individuals was not disturbed, may be admissible for the purpose of weakening the force of the prosecutor's testimony touching the offensive character of the noises ; but not as showing a specific defense.

3. *Practice, criminal—Disturbing the peace—Evidence—Rebuttal.*—Testimony in chief having been concluded on both sides, the court committed no error in disallowing proof by the plaintiff that "the peace of individuals and the neighborhood was disturbed." Such proof would not be in rebuttal, but was necessary in the first instance to sustain the charge.

*Appeal from St. Charles Circuit Court.*

*T. F. McDearmon,* for Appellant.

*Lackland & Broadhead,* for Respondent.

LEWIS, Judge, delivered the opinion of the court.

Defendant was charged before the city recorder, with violation of a corporation ordinance, the second section of which is as follows :

"Every person who shall wilfully disturb the peace or quiet of any street, alley, avenue, public square or market place or wharf, landing, vessel, church, theater, house or other building, public or private, family or person within the city, by loud or unusual noise, by blowing horns, trumpets or other instruments, by the rattling or playing of organs, drums, tambourines, kettles, pans, tubs or other sounding vessels, by the rattling of bells or other noisy instruments, engines or machines, by hallooing, shouting, loud and boisterous laughing, bellowings, howlings, swearing, profane, indecent or obscene language or conversation, or by any other device or means whatsoever, or by tumultuous or offensive language or carriage, by threatening, quarrelling, scolding, traducing, cursing, challenging, assaulting, striking or fighting any person under any pretense or pretext whatsoever, shall be deemed guilty of a misdemeanor."

A fine of one dollar being imposed on the defendant, he appealed to the Circuit Court, where a jury trial resulted in his acquittal.

The plaintiff's evidence consisted of the city ordinance and the testimony of two policemen, who stated that the defendant was one of a party engaged in a "charivari." These witnesses saw the participators approaching the scene of one Austerschmidt's wedding festivities, and warned them to desist. They heard the ringing of bells, blowing of horns, shouting, etc., at the house of the wedding, and also at one or two neighboring saloons, and described the uproar in generally emphatic terms. A number of witnesses were examined for the defense, and their testimony was generally to the effect that the noises were very slight, and not of a character to disturb the peace of any body. The bridegroom, who testified, seems to have regarded the visit as a complimentary attention, and, upon the suggestion of his bride, he stipulated for more "music" by the performers, before paying the fee of three dollars, which he understood was customary on such occasions. The happy pair being thus accommodated, the serenaders left, to distribute the proceeds among the saloon-

keepers.    No witness on either side testified that he, or any
other person, was disturbed by the demonstration.

The appellant complains that error was committed in the ad-
mission of defendant's testimony, assuming that its object was
to show by way of special defense, that the persons testifying
were not individually disturbed by the noises complained of.
Such an object alone would be manifestly illegitimate.  But
the testimony, as we understand it, had a different office to
perform.    Its tendency, as given, was to weaken the force of
the plaintiff's evidence showing the offensive character of the
noises, and their adaptability to a disturbance of the public
repose.  For this end the testimony was proper, and the court
committed no error in admitting it.

At the close of the defendant's testimony, the plaintiff of-
fered to prove that "the peace of individuals and the neigh-
borhood was disturbed."    Defendant's objection to this was
sustained by the court, on the ground that such testimony
would not be in rebuttal, and should have been offered in
chief.    Considering that a disturbance of the peace was the
very *gravamen* of the charge, without which the plaintiff
had no case, we cannot perceive wherein this action of the
court was wrong.

Plaintiff asked the court to instruct the jury that, "if the
defendant was engaged in ringing bells, blowing horns or
beating pans, or was shouting, hallooing or making loud or un-
usual noises within the limits of the city, or was with others
who were so engaged, the verdict should be for the plaintiff."
This was refused, and the court, of its own motion gave in-
structions to the effect that if defendant "either by himself or
in conjunction with others, disturbed the peace and quiet of
the citizens of St. Charles, or any of them," by the means
complained of, then he was guilty under the ordinance ; and
that the charge could not be sustained by simply showing
that the defendant was engaged in a "charivari," unless the
effect of this was to disturb the peace and quiet of the citi-
zens of St. Charles, or some of them.

Against this treatment of the case, appellant's counsel presents an ingenious argument to show that the direct object of the ordinance was a suppression of the nonsensical and pernicious amusement known as the "charivari," and therefore the performance should have been punished, without inquiry into its effect. This is transferring the penalty from the crime to the means whereby it may or may not be committed. Murder may be done by means which would be perfectly innocent in themselves, and but for the effect intended and produced. If the object of legislative censure were the "loud and unusual noise, by blowing horns, trumpets or other instruments," this would apply to every band of skilled musicians marching through the streets. Municipal legislators are the guardians of the public peace, not the arbiters of taste. The St. Charles authorities may well have considered the charivari as calculated to grate harshly on newly-wedded bliss, and thus to disturb the peace of at least two persons who are entitled to the equal protection of the laws. But where, upon their own avowal, the parties most interested seemed to like it, and no other person admits being disturbed by it, there would appear at least a stretch of authority in undertaking to punish the bad taste of the performance.

The ordinance under consideration is strictly modelled after the section of our criminal statute law, which was before this court in State vs. Fogerson, (29 Mo., 416) to which case we are referred by appellant. The language there used seems conclusive of this question. Says the opinion delivered by judge Ewing: "The first instruction given on the part of the State, unconnected with others given at the instance of the defendant, is erroneous, because it does not direct the attention of the jury to a particular circumstance essential to an offense, namely, the disturbance of the peace of the neighborhood. It tells the jury that if they believe the defendant used indecent language, or loud or offensive language, in the town of Lebanon, and that such language was willfully used, they must find defendant guilty. These facts may have been found by the jury, and yet no offense have

been committed, because no disturbance may have been caused by it. This instruction, then, in this respect, was improper."

Judgment affirmed; all the judges concur.