No. 16,374.

FLORES ET AL. *v.* CITY AND COUNTY OF DENVER.
(220 P. [2d] 373)

Decided June 5, 1950.

Messrs. MENIN & CONRY, for plaintiffs in error.

Mr. J. GLENN DONALDSON, Mr. ABE L. HOFFMAN, for defendant in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

SHORTLY after seven o'clock on the evening of December 21, 1948, several police officers, who were the principal witnesses for the city as to the conduct of the defendants resulting in their arrest, went to the residence of the Governor of the State of Colorado in response to information that a group of people expected to demonstrate before the Governor's house. They testified in substance that they found a crowd of from fifty to seventy people assembled in front of the house, some merely watching and some milling around in a counterclockwise circle on the sidewalk and lawn, chanting such phrases as, "Governor Knous come out of the house"; "the death of Reuben Garcia is on your shoulders"; "clean up Golden"; "stop beating the boys." Some carried placards containing such statements as, "Gov. Knous appoint a citizen's committee to investigate Golden"; "stop the whipping of boys"; "clean up Golden breeding house of crime"; "we demand a full investigation of Reuben's tragic death," and "Mr. Gov. thousands of dollars for race tracks but only pennies for our boys." Most of the chanting was in a high-pitched voice, more or less like a football game, but perhaps not quite so

loud, and could be heard in the neighborhood of two blocks. This continued for approximately half an hour when the chief of police and city attorney came on the scene. After observing the conduct of the group from ten to fifteen minutes, the chief made inquiry as to who was in charge of the group and, upon being advised, requested him to have the group dispersed for the asserted reason that they were violating the city ordinance against loitering and disturbance. One of the leaders replied that they had agreed to continue the demonstration for an hour and had been there forty-five minutes so they only had fifteen minutes to go and they would disperse when that time was up. The chief insisted that they disperse immediately and, upon their declining to order such dispersal, the leaders and some of the others were placed under arrest and charged with violation of section 1307, article IV of the Denver Municipal Code of 1927. The several cases were consolidated for trial and all of the defendants were found guilty in the police court; thereafter appeal was taken to the county court and upon trial de novo defendants again were found guilty of violating said section and fines were assessed against them.

Numerous challenges are raised in behalf of plaintiffs in error, but the only one we deem it necessary to consider is the challenge as to the sufficiency of the evidence to support the judgment of the trial court. The applicable ordinance reads as follows: "Section 1307. Any person who shall disturb the peace of others by violent, tumultuous, offensive or obstreperous conduct or carriage, or by loud or unusual noises, or by unseemly, profane, obscene or offensive language, calculated to provoke a breach of the peace, or by assaulting, striking or fighting another, or any person who shall permit any such conduct in or upon any house or premises owned or possessed by them or under their management or control, when within their power to prevent, so that others in the vicinity are disturbed thereby,

shall, upon conviction thereof, be fined in a sum of not less than five dollars nor more than two hundred dollars for each and every offense."

This ordinance makes it an offense "to disturb the peace of others" by any of the means specifically set out therein. So far as disclosed by the record here, no person complained to the police or to any other person that his peace had been disturbed. There is no showing that there were any persons present in the neighborhood other than those voluntarily gathered for the purpose of participating in or watching the demonstration, including the police officers, a newspaper photographer, and a newspaper man from Fort Collins, who testified at the trial, none of whom appear to have lived in that vicinity. There is no evidence of "violent, tumultuous, offensive or obstreperous conduct or carriage"; there is no evidence of "unseemly, profane, obscene or offensive language, calculated to provoke a breach of the peace"; there is no evidence of "assaulting, striking or fighting." The only method of disturbance covered by the ordinance and disclosed by the evidence is that of "loud or unusual noises," described by the witnesses as like those of a football game. It further affirmatively appears that the noises of which complaint is made consisted of a chanting of grievances of which the protesting group sought redress from the Governor by demonstrating at his residence. One of the police officers testified: "Q. Then as a matter of fact, what was going on there was that these people were picketing because of a grievance they had against the Governor? A. That was my idea of it. Q. That was your idea and that is the impression anybody else would have gotten, wasn't it? A. Yes, sir. Q. They went back and forth in front of the Governor's house picketing the Governor's house for redress that they thought they were entitled to? A. Evidently they did, yes. That was my opinion. Q. Nobody was disturbed? A. I had no complaints of it so I couldn't say."

■ There is no evidence as to any particular improper conduct of any one of the defendants here appearing. At the most they were parading about, vociferously protesting conditions at Golden and demanding action thereon by the Governor. The protests of the defendants are not shown to have been in anywise violent or threatening, or to have been likely to produce violence, or to cause consternation or alarm. The carrying of placards as here shown was a form of free speech. Our Colorado Constitution protects the right peaceably to assemble, and the right to apply to those invested with the powers of government for redress of grievance by petition or remonstrance, as well as the right of free speech. Article II, section 24. Those rights may be asserted as well at the residence of the Governor as at the State House.

■ ■ If the ordinance here involved is to be strictly and literally construed, then, in order that any person "shall disturb the peace of others," it is necessary that the peace of others be actually disturbed, and, to establish the offense, proof of such actual disturbance is necessary. In *Hamilton v. Montrose*, 109 Colo. 228, 124 P. (2d) 757, defendant was convicted of violation of a somewhat similar ordinance, by using a loud speaker to broadcast his preaching and announcement of religious services on one of the main business streets of the city of Montrose during business hours. The evidence disclosed numerous complaints from property owners and occupants of property in the neighborhood, and we said: * * * "the whole gravamen of the action would appear to be the fact that the defendant had definitely disturbed the lawful occupants and property owners of the streets in the neighborhood of the loud-sounding device." In *City of St. Charles v. Meyer*, 58 Mo. 86, there was involved violation of an ordinance providing that the disturbance of the peace or quiet of any street or persons by loud or unusual noise, etc., was a misdemeanor. Defendant was one of a party engaged

in a charivari, but the bride and bridegroom made no objection to the bell ringing, the horn blowing and shouting, there was no evidence that anyone was disturbed thereby, and the court, following *State v. Fogerson*, 29 Mo. 416, held, in substance, that it was not sufficient to show loud and unusual noise alone, but that actual disturbance is an essential of the offense. In *Commonwealth v. Oaks*, 113 Mass. 8, defendant was charged as a disturber and breaker of the peace in the utterance of loud exclamations and outcries, at about 11 o'clock at night, and the court said, "It is sufficient if the acts proved are of such a nature as tend to annoy all good citizens, *and do in fact annoy any one* present and not favoring them." (Italics are ours.) A similar rule was announced in *Garvin v. Mayor*, 15 Ga. App. 633. In *Stewart v. State*, 4 Okla. Crim. 564, 109 Pac. 243, conviction for disturbance by loud and vociferous language was sustained, but it was wanton and extreme, and there was evidence of actual disturbance thereby.

By section 191, chapter 48, our criminal statute makes it an offense, "If any person maliciously or willfully disturbs the peace or quiet or any neighborhood or family, by loud or unusual noises," or other means therein specified. In *Willburn v. People*, 55 Colo. 454, 135 Pac. 799, defendants were charged with disturbing the peace and quiet of the neighborhood of one Martinez by loud and unusual noises. The evidence disclosed an altercation of a disturbing character at a school election held in a schoolhouse some distance from the abode of Martinez, but there was no evidence that the noises occurred in his neighborhood or that his family was disturbed thereby, and we held that the evidence introduced was not sufficient to establish the offense charged. In *State v. Hughes*, 82 Mo. 86, defendants were indicted for disturbing the peace of the neighborhood. The evidence disclosed that the offense occurred at a park, where beer was dispensed and where there was an assemblage of people. No disturbance was shown other

than of those so assembled, and there was no evidence that any person living in the neighborhood was disturbed or had even heard of the affray. This evidence was held insufficient to show disturbance of the people of the neighborhood. In *State v. Johnson,* 149 Mo. App. 119, 130 S.W. 110, defendant was charged with disturbing the peace of the neighborhood of a public square. The only witnesses testifying as to disturbance did not live near the square, and the evidence was held insufficient.

█ But even if the ordinance be construed in broader spirit to include breach of the peace generally, in order to come within its prohibition, conduct must constitute a threat to the peace of the community. Breach of the peace has often been defined as, "a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *People v. Most,* 171 N. Y. 423, 64 N.E. 175; *People v. Perry,* 265 N. Y. 362, 193 N.E. 175. Here there was no evidence of violence, or of likelihood or threat of violence, or of consternation or alarm. There was testimony as to hearing the words "you louse" used in connection with the words, "Governor Knous come out of the house," but other witnesses present failed to hear such words and there is no evidence that any of these defendants used them or that they were a part of the chanted words repeatedly used by the participants in the protest. These defendants cannot properly be charged with using or sponsoring them.

█ █ In the situation here presented, we have another element, absent from the cases hereinabove noted. The disturbance of which complaint was made in those cases was wanton and without worthy purpose. In the instant case, the noise involved was incidental to a legitimate right, protected by the Constitution, to appeal to those in authority for redress of grievance by remonstrance, and such right must be balanced against

the right of the community to peace and quiet. There exists the undoubted authority of the state reasonably to limit the free exercise of the right of remonstrance, as well as of the free exercise of religion, and even of the right of free speech itself, where they sanction incitement to riot or constitute an immediate threat to public safety, peace or order, but such rights may not be lightly nor unduly surpressed. *Hamilton v. Montrose, supra; Cantwell v. Connecticut,* 310 U. S. 296, 60 Sup. Ct. 900, 84 L. Ed. 1213; *McKee v. State,* 75 Okla. Crim. 390, 132 P. (2d) 173; *City of Fort Scott v. Arbuckle,* 164 Kans. 49, 187 P. (2d) 348; *People v. Burman,* 154 Mich. 150, 117 N.W. 589. Public disturbance through mere exuberance of spirit or loud speech alone, at the time of day and to the extent appearing in the present case, is not of such import as to outweigh them. It would seem that what the public endures for the sake of sports, it should be able to endure in the assertion of fundamental rights. That is part of the price of our freedoms. In the instant case, as in the Cantwell case, there was involved no assault nor threat of bodily harm, no truculent bearing, no intentional discourtesy, no personal abuse, but only the persistent effort here to seek redress of grievance and to emphasize a remonstrance, as there, to persuade a listener to buy a religious book and contribute to a cause. Where so conducted, and in the absence of showing that, as brought home to the participants, there was actual disturbance of some individual or individuals of the community, we think this was a right protected by the Constitution.

The judgment is reversed.

MR. JUSTICE HAYS and MR. JUSTICE ALTER dissent.