COLORADO COURT OF APPEALS                                    **2016COA124**

Court of Appeals No. 15CA1324
City and County of Denver District Court Nos. 14CR10235 & 14CR10393
Honorable Brian R. Whitney, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Danny Gene Garcia,

Defendant-Appellant.

ORDER AFFIRMED

Division II
Opinion by JUDGE WEBB
Ashby and Márquez*, JJ., concur

Announced August 25, 2016

Cynthia H. Coffman, Attorney General, Melissa D. Allen, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Hardy and Juba, LLC, Michael S. Juba, Denver, Colorado, for Defendant-
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

¶ 1 Defendant, Danny Gene Garcia, appeals the district court's refusal to award presentence confinement credit (PSCC) against the sentences it imposed in case numbers 14CR10235 and 14CR10393. He contends that we should interpret "may" in section 18-1.3-407(2)(a)(I), C.R.S. 2015, as requiring a district or juvenile court to award PSCC whenever an offender is sentenced to the Youthful Offender System (YOS). Alternatively, he contends that even if "may" is permissive, the district court abused its discretion in refusing to award PSCC. We reject both contentions and affirm.

## I.  Background

¶ 2 The prosecution charged defendant as an adult with multiple felonies in each case, although he had committed the offenses when he was a juvenile. Under a global disposition, defendant pleaded guilty to one felony in each case. The parties stipulated to concurrent sentences in the custody of the Department of Corrections (DOC), with a controlling sentence of eighteen years in case number 14CR10235. They also agreed that each DOC sentence would be suspended if defendant successfully completed

1

six years in the YOS.  The court sentenced defendant consistent with the agreement, but refused to award PSCC.

## II.  Section 18-1.3-407(2)(a)(I) Does Not Mandate an Award of PSCC

¶ 3    The pertinent portion of section 18-1.3-407(2)(a)(I) provides: "The court *may* award an offender sentenced to the [YOS] credit for presentence confinement; except that such credit *shall* not reduce the offender's actual time served in the [YOS] to fewer than two years."  (Emphasis added.)

¶ 4    Defendant first contends the district court misinterpreted section 18-1.3-407(2)(a)(I) as making a PSCC award discretionary. He argues that "may" in section 18-1.3-407(2)(a)(I) requires a court to award PSCC when it sentences a defendant to the YOS (unless the credit would reduce the sentence to less than two years).  In effect, he asserts that "may" means "shall" because the YOS statute mandates that an offender be sentenced as an adult and be subject to the laws and DOC rules, regulations, and standards pertaining to adult inmates; DOC operates the YOS; and section 18-1.3-405, C.R.S. 2015, requires a court to award PSCC when a defendant is sentenced to the DOC.

2

¶ 5    Defendant's three assertions are correct.  But considering the commonly understood permissive meaning of "may," the structure of section 18-1.3-407(2)(a)(I), and the rehabilitative purpose of the YOS, we reject his conclusion that "may" means "shall."

## A.  Preservation and Standard of Review

¶ 6    Defendant made a similar statutory interpretation argument to the trial court.  Statutory interpretation is a question of law subject to de novo review.  *See Dubois v. People*, 211 P.3d 41, 43 (Colo. 2009).

## B.  Rules Governing Statutory Interpretation

¶ 7    Several incontrovertible rules inform the task of statutory interpretation.

¶ 8    To begin, a court endeavors to interpret a statute "in strict accordance with the General Assembly's purpose and intent in enacting them." *In re 2000-2001 Dist. Grand Jury*, 97 P.3d 921, 924 (Colo. 2004).  In determining that intent, the court first looks to the language chosen by the General Assembly, *see Martin v. People*, 27 P.3d 846, 851 (Colo. 2001), giving words and phrases their

"plain and ordinary meaning," *People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986).

¶ 9 Courts also read and consider the statute as a whole, construing it "to give consistent, harmonious, and sensible effect to all its parts." *Id.* Courts presume that the General Assembly intended the entire statute to be effective. *See* § 2-4-201(1)(b), C.R.S. 2015; *Martin*, 27 P.3d at 851. And they avoid constructions that would lead to an illogical or absurd result, along with those which would be at odds with the overall legislative scheme. *See People v. Blue*, 253 P.3d 1273, 1277 (Colo. App. 2011).

¶ 10 "If the statutory language unambiguously sets forth the legislative purpose," the court "need not apply additional rules of statutory construction to determine the statute's meaning." *Martin*, 27 P.3d at 851. But if the language is ambiguous or appears to conflict with other statutory provisions, the court may consider the statute's legislative history, the object sought to be attained, the consequences of a particular construction of the statute, and the legislative declaration or purpose. *See* § 2-4-203(1), C.R.S. 2015; *Martin*, 27 P.3d at 851.

¶ 11     As particularly relevant here:

> If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

§ 2-4-205, C.R.S. 2015. The preference in section 2-4-205 for the special or local and more recently enacted provision over the general provision applies even when the statutes appear in different sections. *See, e.g.*, *Carson v. Reiner*, 2016 CO 38, ¶¶ 15-18 (giving preference to more specific and more recently enacted provision); *People v. Fransua*, 2016 COA 79, ¶¶ 21-22 (same).

## C.  Application

¶ 12     Defendant does not assert that the language of section 18-1.3-407(2)(a)(I) — "The court may award an offender sentenced to the [YOS] credit for presentence confinement; except that such credit shall not reduce the offender's actual time served in the [YOS] to fewer than two years" — is ambiguous. Nor is it.

5

¶ 13    "[T]he legislature's use of the term 'may' is generally indicative of a grant of discretion or choice among alternatives." *A.S. v. People*, 2013 CO 63, ¶ 21.  In contrast, "shall" is generally mandatory.  *See Dist. Court*, 713 P.2d at 921.  And "[w]here both mandatory and directory verbs are used in the same statute, . . . it is a fair inference that the legislature realized the difference in meaning, and intended that the verbs should carry with them their ordinary meanings."  *A.S.*, ¶ 21 (quoting 3 Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 57:11 (7th ed. 2015)).  This inference strengthens where "shall" and "may" are "used in close juxtaposition."  *Id.* (quoting 3 Singer & Singer, *Sutherland Statutory Construction* § 57:11).  Of course, "[w]e presume that the legislature does not use language idly."  *Id.* at ¶ 29.

¶ 14    Applying these interpretive guides to section 18-1.3-407(2)(a)(I), the legislature's use of the words "may" and "shall" in the same sentence indicates that it not only recognized their different meanings, but that it intended the words to carry their ordinary meaning.  Thus, "may" in the first clause of the

6

sentence indicates a grant of discretion; "shall" in the second clause denotes a mandate.

¶ 15 The underlying purpose of the YOS statute — to provide a sentencing alternative for youthful offenders — supports this interpretation. The General Assembly declared that it intended to establish the YOS as a sentencing option with "a controlled and regimented environment that affirms dignity of self and others, promotes the value of work and self-discipline, and develops useful skills and abilities through enriched programming." § 18-1.3-407(1)(a). Consistent with this intent, a YOS sentence should be more rehabilitative than punitive.

¶ 16 True enough, under the YOS statute, defendant was sentenced as an adult and "subject to all laws and [DOC] rules, regulations, and standards pertaining to adult inmates." § 18-1.3-407(1)(d). But that overlay must yield to the extent it is at odds with the YOS statute's broader objectives. § 18-1.3-407(1)(a).

¶ 17 Nor does the PSCC requirement in section 18-1.3-405 support a mandatory interpretation of section 18-1.3-407(2)(a)(I). First, although both sections address PSCC, section 18-1.3-407(2)(a)(I)

applies only when a defendant is sentenced to the YOS. Second, the legislature enacted the relevant portion of section 18-1.3-405 (formerly section 16-11-306) in 1986. *See* Ch. 124, sec. 3, § 16-11-306, 1986 Colo. Sess. Laws 734. But the legislature did not add the provision concerning PSCC to section 18-1.3-407(2)(a)(I) (formerly section 16-11-311(2)(a)(I)) until 1996. *See* Ch. 229, sec. 1, § 16-11-311(2)(a)(I), 1996 Colo. Sess. Laws 1145. Thus, section 18-1.3-407(2)(a)(I) applies here not only because it is more specific than section 18-1.3-405, but also because it was enacted more recently. *See Martin*, 27 P.3d at 852.

¶ 18    In sum, we conclude that the word "may" does not mandate that a court award PSCC when it sentences a defendant to the YOS. Instead, it gives the court discretion in determining whether to award PSCC based on the circumstances of each case.[1]

---

[1] We note that if defendant does not successfully complete his six-year YOS sentence and is then resentenced to the DOC, he will be entitled to an award of PSCC under section 18-1.3-405, C.R.S. 2015.

## III. The District Court Did Not Abuse Its Discretion in Declining to Award Defendant PSCC

¶ 19    Alternatively, defendant contends the district court abused its discretion when it refused to award PSCC for the 358 days he spent in jail before he was sentenced in case number 14CR10235 and the 418 days in case number 14CR10393.[2] He argues that the district court's refusal was not supported by the record because he would still serve just under five years in the YOS and he could be rehabilitated within two to three years. We discern no abuse of discretion.

### A. Sentencing Within the Range of the Plea Agreement

¶ 20    As a preliminary matter, we acknowledge but reject the Attorney General's argument that because defendant was sentenced within the range agreed to by the parties in the plea agreement, his sentence is not subject to appellate review. *See* § 18-1-409(1), C.R.S. 2015 (A defendant does not have a right to appellate review of the propriety of the sentence "if the sentence is within a range agreed upon by the parties pursuant to a plea agreement."). But

---

[2] The Attorney General does not challenge defendant's PSCC calculations.

9

the parties' agreement is silent as to PSCC. Thus, although defendant was sentenced to six years in the YOS — just as provided in the plea agreement — we will consider his PSCC argument.

## B. Preservation and Standard of Review

¶ 21    Before the district court, defendant advanced reasons why he should be awarded PSCC. An appellate court reviews a district court's refusal to award PSCC for an abuse of discretion. *See* § 18-1.3-407(2)(a)(I). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *See People v. Herrera*, 2014 COA 20, ¶ 16.

## C. Application

¶ 22    In refusing to award any PSCC against the YOS sentence, the district court made four findings:

- The purpose of the YOS was to rehabilitate.

- The longer YOS had "to effectuate its rehabilitative purpose," the more likely it would be to succeed at rehabilitating defendant.

- Defendant needed more time to rehabilitate than the codefendants based on his diagnoses, criminal history, and increasing propensity toward violence.

- The sentencing decision was intended to be remedial, not punitive.

¶ 23     The record supports these findings. For example, in one of the psychological evaluations, the doctor opined, "Given the likelihood of strong narcissistic personality tendencies, residual ADHD symptoms, and highly probable Conduct Disorder, [defendant] is not going to respond quickly or with any depth to any intervention modality." In another psychological evaluation, a different doctor diagnosed defendant with attachment disorder. This doctor stated that the disorder was "difficult to treat but far from impossible"; treatment would require, in part, an environment that was well-structured, safe, and rational, along with therapeutic efforts that would require time and consistency; and defendant needed "to be in a contained environment for some time."

¶ 24     During the sentencing hearing, the prosecutor argued that denying PSCC would be appropriate for defendant for the following

reasons.  He was the most culpable of the codefendants and, with regard to his history, he was "most similar" to the codefendant who would not receive PSCC; based on the doctors' diagnoses, treating defendant would take a long time; when defendant committed the offenses in one of the cases, he was on bond and was wearing an ankle monitor; defendant was the leader of a gang that had become focused on more dangerous crimes like robberies and assaults; at the transfer hearing, detectives testified that crime had dropped dramatically after defendant's incarceration; defendant organized the crimes; the crimes had a significant impact on the victims; and a ten-day search warrant for defendant's Facebook page showed daily references to criminal behavior, gang activity, and threats.

¶ 25    Defense counsel did not dispute these arguments and acknowledged that supporting information had been presented to the juvenile court during the transfer hearing.  Still, counsel pointed out that at the transfer hearing one of the doctors had testified that treating defendant would take about three years.

¶ 26    But defendant has not made the transfer hearing transcript a part of the record on appeal.  *See People v. Campbell*, 174 P.3d 860,

867 (Colo. App. 2007) ("[I]t is the appellant's duty to provide those portions of the record necessary to substantiate the claims of error on appeal."). And the psychological evaluations before the court during the sentencing hearing indicated that treating defendant's disorders would be difficult as well as time consuming. Given that the district court also heard undisputed evidence about the extent of defendant's criminal activity, its decision not to award PSCC was not manifestly arbitrary, unreasonable, or unfair. *See Herrera,* ¶ 16.

## IV.  Conclusion

¶ 27    The order is affirmed.

JUDGE ASHBY and JUDGE MÁRQUEZ concur.