COLORADO COURT OF APPEALS 2017COA34

Court of Appeals No. 15CA0050
El Paso County District Court No. 13CR123
Honorable Robert L. Lowrey, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Randall Eric Leverton,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BERGER
Dailey and J. Jones, JJ., concur

Announced March 23, 2017

Cynthia H. Coffman, Attorney General, Lisa K. Michaels, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Katayoun A. Donnelly, Alternative Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1    A jury convicted defendant, Randall Eric Leverton, of theft by receiving and possession of drug paraphernalia. He appeals, contending the trial court erred by (1) joining the two offenses in a single trial and not allowing him to plead guilty to the paraphernalia charge before joining them and (2) admitting into evidence two witnesses' prior inconsistent statements. He also contends that the evidence is insufficient to support his convictions. We address and reject these contentions and affirm.

## I.  Relevant Facts and Procedural History

¶ 2    On a cold evening, the victim started her car and left it running while she collected some belongings from inside her home. She returned to where the car had been parked a few minutes later and saw that the car was gone. She immediately reported the theft to the police.

¶ 3    A few days later, a police officer pulled over the stolen car. Leverton was seated in the front passenger side of the car, another man was driving, and two women were in the back seat. When asked who owned the car, Leverton told the officer that it belonged to his girlfriend, the victim. The victim later testified at trial that she did not know and had never met Leverton.

1

¶ 4     The officer searched the vehicle and discovered several small baggies which he suspected contained cocaine and methamphetamine. All four passengers were patted down, arrested, and transported to the police station.[1]

¶ 5     Leverton and the other man were transported in the same police vehicle. One of the transporting officers testified at trial that while the other man apparently slept during the drive to the police station, Leverton, who was handcuffed, "started moving around in the seat, kind of bending over and just acting not normal." After removing Leverton from the vehicle, the officer searched the back seat and discovered a type of pipe commonly used to smoke methamphetamine.

¶ 6     Based on the discovery of the pipe, Leverton was charged with possession of drug paraphernalia, a petty offense under section 18-18-428(2), C.R.S. 2016. Approximately two weeks later, in a separate case filed in the same judicial district, Leverton was

---

[1] Leverton was not charged with any crimes associated with the officer's discovery of these drugs.

2

charged with theft by receiving, a felony under section 18-4-410(1), (4), C.R.S. 2012.[2]

¶ 7     The day before trial on the felony theft charge, the prosecution moved to amend the complaint to join the paraphernalia charge and dismiss the petty offense case.  Leverton's counsel objected, stating that his client intended to "enter a straight guilty plea" to the paraphernalia charge, and then move to dismiss the felony case "for failure to join."  The court granted the prosecution's motion, stating that the prosecution's dismissal of the paraphernalia case and the amendment of the complaint in the felony case "in fact, does join [the petty offense case] into [the felony case]" and dismissed the petty offense case because "it doesn't have a count anymore." Leverton pleaded not guilty to both charges.

¶ 8     At trial, the two women in the back seat of the stolen car testified under subpoena.  Both women testified that, due to drug use, they could not remember the events of that night, nor could they remember making any statements to the police.  The prosecutor questioned both women based on oral statements they

---

[2] Section 18-4-410 has since been repealed, effective June 5, 2013, and consolidated with the general theft statute, section 18-4-401, C.R.S. 2016.

allegedly had made to the police following their arrests. For instance, the prosecutor asked one of the women, "Do you recall telling [the police] that Mr. Leverton had had the vehicle for several days and that someone had given it to him?"

¶ 9 Leverton's counsel objected to these questions because he argued that they "essentially just end up being testimony via the question itself, particularly when the witness has testified she has no recollection." The court ruled that the questions were proper impeachment questions. The witnesses' oral statements later were admitted into evidence over Leverton's objection through the testimony of the two police officers to whom the witnesses made their statements.

¶ 10 The jury convicted Leverton as charged and the trial court sentenced him to three years of probation and forty-eight hours of useful public service.

## II. Joinder of the Theft and Paraphernalia Charges

¶ 11 Leverton argues that the trial court erred when it rejected his guilty plea on the paraphernalia charge and then permitted the prosecution to add that charge to the complaint. He claims that the trial court's actions violated Colorado's mandatory joinder statute,

section 18-1-408, C.R.S. 2016, as well as the Double Jeopardy Clauses of both the United States and Colorado Constitutions. We reject these arguments.

¶ 12    The Attorney General argues that because Leverton did not object to the procedure for joining the offenses, but only requested that the trial court accept his guilty plea prior to joining them, his claims should be reviewed only for plain error. We need not decide whether Leverton preserved these claims because we perceive no error, plain or otherwise. *Cf. Marshall v. People*, 2013 CO 51, ¶ 15 n.5 (declining to address whether the defendant preserved a Confrontation Clause challenge because there was no confrontation error).

¶ 13    The mandatory joinder statute "seeks to prevent vexatious prosecution and harassment of a defendant by a district attorney who initiates successive prosecutions for crimes which stem from the same criminal episode." *People v. Talarico*, 192 Colo. 445, 446, 560 P.2d 90, 91 (1977); *see* § 18-1-408(2). The statute requires that all such offenses known to the prosecutor which were committed in the same judicial district must be prosecuted by separate counts in a single prosecution. § 18-1-408(2). Any offense

not joined "cannot thereafter be the basis of a subsequent prosecution[.]" § 18-1-408(2).

¶ 14    Whether a trial court properly joined multiple offenses under the mandatory joinder statute presents a mixed question of law and fact. *See People v. Marshall*, 2014 COA 42, ¶ 19 (applying the "mixed question of law and fact" standard of review to the question whether a trial court properly dismissed a criminal case under the mandatory joinder statute). The trial court's interpretation of the joinder statute is a question of law we review de novo, *People v. Garcia*, 2016 COA 124, ¶ 6, but we defer to factual findings supported by the record, *People v. Marshall*, ¶ 19.

¶ 15    Leverton argues that the trial court erred in refusing to accept his guilty plea in the paraphernalia case and in granting the prosecution's motion to amend the theft complaint because the result was that he was effectively charged in two separate cases with the same offense. He insists that "the only way the prosecution could go forward with charging [him] for both charges was to file a motion to *join* the two cases before the trial." (Emphasis added.)

¶ 16     We conclude, as did the trial court, that while the prosecution's motion was styled as a motion to amend, it was effectively a motion to join the two offenses. In *Jeffrey v. Dist. Court,* 626 P.2d 631, 638-39 (Colo. 1981), the supreme court held that "section 18-1-408(2) does not prohibit the court from permitting the district attorney to add to a criminal information other counts that arise from the same criminal episode as the original count so long as the additional counts are filed prior to the jeopardy stage of the prosecution." That holding is dispositive here; the prosecution moved to join the offenses prior to Leverton's attempt to plead guilty to the paraphernalia charge. *See Jeffrey,* 626 P.2d at 636.

¶ 17     Moreover, irrespective of whether the procedure utilized by the court complied strictly with the mandatory joinder statute, it nevertheless met the statute's purpose of preventing successive prosecutions. Leverton points to no unfair prejudice resulting from the procedure used.

¶ 18     The court also did not abuse its discretion in rejecting Leverton's guilty plea. Trial courts have discretion to accept or to reject a guilty plea because "[t]here is no absolute right to have a

guilty plea accepted." *People v. Jasper*, 17 P.3d 807, 812 (Colo. 2001) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

¶ 19    Had the court accepted Leverton's guilty plea on the paraphernalia charge prior to joining the two offenses, the mandatory joinder statute may have prohibited prosecution of the felony theft charge.  Indeed, Leverton expressly sought to plead guilty to the paraphernalia charge — a petty offense — for the purpose of preventing prosecution of the felony charge.  While neither this court nor the supreme court has addressed such an attempt to manipulate the criminal justice system to escape additional charges, courts in other jurisdictions have squarely rejected it.

¶ 20    In *State v. Turner*, 980 P.2d 1188, 1190 (Utah Ct. App. 1998), the Utah Court of Appeals held that the trial court abused its discretion when it accepted the defendant's guilty plea on a traffic violation because doing so effectively nullified the state's right to prosecute the defendant on the more serious charge of negligent homicide.

¶ 21    The Wisconsin Supreme Court similarly held that the trial court did not err in rejecting a defendant's guilty plea when the

defendant intended to "create a situation of double jeopardy" to protect himself from additional charges. *State v. Waldman*, 203 N.W.2d 691, 693 (Wis. 1973).

¶ 22    And in *Newsome v. State,* 797 N.E.2d 293, 298 (Ind. Ct. App. 2003), the Indiana Court of Appeals held that "a trial court does not abuse its discretion in rejecting a guilty plea where the court reasonably could have concluded that the request was a 'ruse' intended to manipulate the system."

¶ 23    Consistent with these cases, and in view of society's interest in maintaining the integrity of the criminal justice system, *People v. Wiedemer,* 852 P.2d 424, 440 (Colo. 1993), we conclude that the court acted within its discretion when it rejected Leverton's guilty plea to the petty offense.

¶ 24    Finally, we reject Leverton's argument that his constitutional right to be free from double jeopardy was somehow violated when the theft and paraphernalia charges were joined.  The Double Jeopardy Clauses comprise "three separate but related prohibitions: (1) a rule which bars a reprosecution for the same offense after acquittal; (2) a rule barring reprosecution for the same offense after conviction, and; (3) a rule barring multiple punishment[s] for the

same offense." *People v. Henderson*, 810 P.2d 1058, 1060 (Colo. 1991) (citation omitted). Leverton does not allege that he was reprosecuted for either the paraphernalia or theft offense after he was convicted, or that he was sentenced or otherwise punished multiple times for those offenses.

¶ 25 Moreover, double jeopardy protection does not attach until the jury has been impaneled and sworn (or, in a bench trial, when the first witness is sworn), or when the trial court accepts the defendant's guilty plea. *Jeffrey*, 626 P.2d at 636. Because the court had not accepted Leverton's guilty plea on the paraphernalia charge (which, as we have concluded above, was appropriate under these circumstances), double jeopardy had not attached, and there was no double jeopardy violation.

III. Admission of Prior Inconsistent Statements

¶ 26 Leverton next argues that the trial court erred in permitting the prosecution to examine two witnesses about their prior statements to the police. He asserts that the prosecutor's questions exposed the jury to inadmissible evidence and violated his confrontation rights. These arguments ignore well-established case law and we reject them.

## A. Admissibility Under CRE 613 and Section 16-10-201, C.R.S. 2016

¶ 27    Generally, we review a trial court's evidentiary rulings for an abuse of discretion. *People v. Tyme*, 2013 COA 59, ¶ 8. But when a defendant asserts that the trial court's evidentiary rulings violated his confrontation rights, we review de novo. *People v. Brown*, 2014 COA 155M-2, ¶ 18.

¶ 28    CRE 613(a) authorizes impeachment by prior inconsistent statement "[w]here the witness denies or does not remember making the prior statement[.]" To do so, "the examiner must call the attention of the witness to the particular time and occasion when, the place where, and the person to whom he made the statement" and may give "[t]he exact language of the prior statement." CRE 613(a).

¶ 29    Similarly, section 16-10-201(1), C.R.S. 2016, provides as follows:

> Where a witness in a criminal trial has made a previous statement inconsistent with his testimony at the trial, the previous inconsistent statement may be shown by any otherwise competent evidence and is admissible not only for the purpose of impeaching the testimony of the witness, but also for establishing a fact to which his

testimony and the inconsistent statement relate, if . . . [t]he witness, while testifying, was given an opportunity to explain or deny the statement or the witness is still available to give further testimony in the trial; and . . . [t]he previous inconsistent statement purports to relate to a matter within the witness's own knowledge.

Under the statute, a witness's inability to remember a statement "is tantamount to a denial that [s]he made the statement." *People v. Baca*, 633 P.2d 528, 529 (Colo. App. 1981) (citing *People v. Pepper*, 193 Colo. 505, 568 P.2d 446 (1977)). The same result obtains under the express language of CRE 613.

¶ 30    Both women testified that they did not remember what happened the night the stolen car was pulled over, nor did they remember any statements they made to the police. To impeach the witnesses, the prosecutor was entitled to confront them with the exact language of their prior statements. CRE 613. Indeed, under section 16-10-201(1)(a), the prosecutor was *required* to give the witnesses "an opportunity to explain or deny the statement[s]" prior to introducing evidence of those statements for purposes of impeachment or to prove a matter related to the statement.

12

¶ 31     Leverton argues that because the witnesses testified that they did not recall making any statements to the police, they effectively did not testify, and therefore their prior statements were not admissible as inconsistent with their testimony. But this argument was squarely rejected in *Baca*. In that case, the witness testified that he did not remember the testimony he gave in a prior trial, nor did he remember the facts underlying his statements at the prior trial. *Baca*, 633 P.2d at 529. This court held the witness's testimony that he could not remember was inconsistent with his prior testimony, and therefore his prior testimony was admissible under section 16-10-201.

¶ 32     We believe that *Baca* was correctly decided and we apply it here. Because both witnesses' testimony amounted to a denial that they made the statements to the police, the prosecution was entitled to impeach the witnesses with the statements, and the court properly admitted those statements. *See also People v. Thomas*, 2014 COA 64, ¶ 20 (applying *Baca*).

## B. Confrontation Clause

¶ 33     We also reject Leverton's related argument that admission of the witnesses' prior statements violated his right of confrontation under the Sixth Amendment.

¶ 34     Out-of-court, testimonial statements by a declarant who is unavailable to testify at trial are barred by the Confrontation Clause unless the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 50 (2004).[3]

¶ 35     Leverton argues that when a witness claims to have no memory of either the prior statements or the events that produced those statements (or perhaps both), she is not "available" for cross-examination within the meaning of the Confrontation Clause and thus her prior statements are inadmissible. While Leverton acknowledges that United States Supreme Court decisions have rejected this argument, he nevertheless argues that these cases

---

[3] Leverton does not make a separate argument that the state constitutional confrontation guarantee in article II, section 16 of the Colorado Constitution provides greater protection than the Federal Confrontation Clause, nor did he raise that argument in the trial court. Consequently, we do not further address the Colorado Constitution. *People v. Ujaama*, 2012 COA 36, ¶ 10 n.3.

14

have been silently overruled by *Crawford.* Our reading of *Crawford* does not support this argument.

¶ 36     The Supreme Court addressed the effect of a witness's memory loss on a defendant's right of confrontation in three pre-*Crawford* decisions: *California v. Green,* 399 U.S. 149 (1970); *Delaware v. Fensterer,* 474 U.S. 15 (1985); and *United States v. Owens,* 484 U.S. 554 (1988). Each of these cases rejected the argument that the testifying witness was unavailable for confrontation purposes because he or she suffered from some memory loss.

¶ 37     In *Green,* the witness had stated, in both a police interview and at a preliminary hearing, that the defendant was his marijuana supplier. 399 U.S. at 151. But at trial, the witness testified that he could not remember how he had obtained the marijuana because he was under the influence of drugs the day it was delivered. *Id.* at 151-52. Rejecting his Confrontation Clause challenge, the Court concluded that "where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." *Id.* at 162.

¶ 38	In *Fensterer*, an expert witness presented his opinion at trial, but could not recollect the basis of that opinion. The Court held that because "[t]he Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion," there was no Confrontation Clause violation. 474 U.S. at 21-22.

¶ 39	Finally, in *Owens*, the victim had been beaten with a metal pipe, resulting in severe memory impairment. 484 U.S. at 556. Despite these injuries, the victim identified the defendant as his attacker. *Id.* At trial, however, the victim testified that while he remembered telling the police who had attacked him, he had no memory that the defendant was his attacker. *Id.* The defendant argued that the victim's loss of memory on this critical matter rendered ineffective any cross-examination of the victim and that as a result, he could not confront the witness in violation of his Sixth Amendment confrontation right. *Id.* at 556-57. The Court rejected this argument, holding that the defendant's confrontation rights were not violated because "[t]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever

16

extent, the defense might wish.'"  *Id.* at 559 (citation omitted).

Because "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor" were satisfied, there was no Confrontation Clause violation.  *Id.* at 560.

¶ 40     Leverton does not contend that *Crawford* expressly overruled *Owens* and nothing in *Crawford* would support such a contention. Instead, Leverton claims that several words buried in one of *Crawford*'s footnotes silently overruled *Owens.*

¶ 41     Footnote nine of *Crawford* states as follows: "[t]he [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial *to defend or explain it.*"  541 U.S. at 59 n.9 (emphasis added).  From these italicized words, Leverton argues that if a witness claims some memory loss, she cannot "defend or explain" her prior statements and thus is unavailable for confrontation purposes.

¶ 42     Virtually every court that has addressed this argument has rejected it and has squarely held that the physical presence of the witness at trial avoids any confrontation issue.  *See, e.g., State v. Real,* 150 P.3d 805, 807 (Ariz. Ct. App. 2007); *State v. Pierre*, 890 A.2d 474, 502 (Conn. 2006); *People v. Bryant*, 909 N.E.2d 391, 399

(Ill. App. Ct. 2009); *Smith v. State*, 25 So. 3d 264, 270 (Miss. 2009); *State v. Legere*, 958 A.2d 969, 977 (N.H. 2008); *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011); *Abney v. Commonwealth*, 657 S.E.2d 796, 802 (Va. Ct. App. 2008); *State v. Price*, 146 P.3d 1183, 1191 (Wash. 2006).

¶ 43 Two courts have taken a more nuanced view. In *Cookson v. Schwartz*, 556 F.3d 647, 651 (7th Cir. 2009), relying on footnote nine's language, the Seventh Circuit held that *Crawford*'s statement that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on this use of his prior testimonial statements" is not dispositive of whether a witness suffering from total memory loss is "available" for confrontation purposes. The court entertained the possibility that total, extreme memory loss could render a witness unavailable for Confrontation Clause purposes. Still, noting that the witness remembered at least some of the underlying events described in her out-of-court statements, the court concluded that the defendant had had "ample opportunity to confront his accuser at trial," and thus his confrontation rights were not violated. *Id.* at 652.

¶ 44    The Mississippi Supreme Court relied on *Cookson* in construing the Mississippi Constitution's confrontation clause in *Goforth v. State*, 70 So. 3d 174 (Miss. 2011).  After the witness made his statement to the police, but before the trial, he was injured in an automobile accident that "substantially impaired his physical and mental conditions," and he testified that he "could not remember anything that had occurred two years prior to the wreck." *Id.* at 182.  The court, observing that the witness's "total loss of memory" was undisputed, held that the witness, "though physically present at trial, did not have the requisite, minimal ability or capacity" under the Mississippi Constitution to be cross-examined. *Id.* at 186.[4]

¶ 45    This case does not require us to determine whether total memory loss coupled with extreme physical disabilities could ever

---

[4] Although *Goforth v. State*, 70 So. 3d 174 (Miss. 2011), analyzed both *Crawford v. Washington*, 541 U.S. 36 (2004), and *United States v. Owens*, 484 U.S. 554 (1988), its holding was predicated on the Mississippi Constitution's confrontation clause, not the federal clause.  As a result, it provides little, if any, support for the federal constitutional argument made by Leverton.

render a witness unavailable under the Confrontation Clause and we express no opinion on that question.[5]

¶ 46   Though both witnesses claimed at trial that they had no memory of the night in question or of any of the statements they made to the police, their actual trial testimony belied those claims. Both witnesses testified that they remembered their car being pulled over, that they remembered being arrested, and both were able to identify who was in the car at the time. Thus, like in *Cookson*, the witnesses were able to recall at least some of the events underlying their statements to the police, and, unlike in *Goforth*, neither witness suffered from "total loss of memory."

¶ 47   Though Leverton claims that he could not effectively cross-examine the witnesses, in fact he did so, emphasizing the witnesses' alleged drug-induced memory loss in an effort to discredit their testimony. As the Court observed in *Owens*, 484 U.S. at 559, attacking a witness's memory is often one of the prime objectives of cross-examination. Leverton was able to do so in this case and that dooms his Confrontation Clause argument.

---

[5] We note that the Supreme Court recognized such a possibility both in *California v. Green*, 399 U.S. 149, 168-69 (1970), and *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

¶ 48    We also observe that a rule that a witness is unavailable for Confrontation Clause purposes based entirely upon the witness's testimony that she suffers from memory loss is unworkable. Memory loss may be real or feigned. It may be total or partial. Sometimes lost memory may be refreshed in whole or in part. To permit a witness to unilaterally control the admission into evidence of the witness's prior relevant statements merely by professing a lack of memory is intolerable to the criminal justice system.

¶ 49    For similar reasons, we reject Leverton's analogy of a witness's exercise of his Fifth Amendment right not to incriminate himself or herself to a witness's professed lack of memory.

¶ 50    These situations are not analogous. In the Fifth Amendment context, the witness has a constitutional right not to testify; so long as that Fifth Amendment right has not been waived, the right is absolute. A court cannot overrule the exercise of the right on the basis that the testimony is essential, and no inquiry into the reasons for the exercise of the right is permissible (other than whether testimony on the subject might tend to incriminate the witness). *People v. Razatos*, 699 P.2d 970, 976 (Colo. 1985). Thus, a witness who exercises her Fifth Amendment right not to testify is

unavailable for Confrontation Clause purposes. *United States v. Smalls*, 605 F.3d 765, 776 (10th Cir. 2010). In contrast, the availability inquiry in the memory loss context depends on a multitude of factors beyond simply an assertion of constitutional rights.

¶ 51 For all of these reasons, we hold that Leverton's right to confrontation was not violated.

## IV. Sufficiency of the Evidence

¶ 52 Leverton argues that the prosecution did not present sufficient evidence to prove beyond a reasonable doubt that he committed theft or possessed drug paraphernalia. We disagree.

¶ 53 "The due process clauses of the United States and Colorado Constitutions prohibit the criminal conviction of any person except on proof of guilt beyond a reasonable doubt." *Kogan v. People*, 756 P.2d 945, 950 (Colo. 1988), *abrogated on other grounds by Erickson v. People*, 951 P.2d 919 (Colo. 1998). A reviewing court faced with a sufficiency challenge must determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant

is guilty of the charge beyond a reasonable doubt. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005); *People v. Gonzales*, 666 P.2d 123, 127 (Colo. 1983).

¶ 54    In determining whether the evidence is sufficient to sustain a conviction, "[t]he prosecution is entitled to the benefit of every reasonable inference that may fairly be drawn from the evidence, even if the record also contains evidence to the contrary." *People v. Thornton*, 251 P.3d 1147, 1149 (Colo. App. 2010).

¶ 55    The determination of the credibility of witnesses is solely within the province of the jury, as is the specific weight to be accorded to that testimony. *People v. Sprouse*, 983 P.2d 771, 778 (Colo. 1999); *see also People v. Duncan*, 109 P.3d 1044, 1045-46 (Colo. App. 2004).

¶ 56    We review the record de novo to determine whether the evidence is sufficient to sustain a criminal conviction. *Dempsey*, 117 P.3d at 807.[6]

---

[6] Relying on *People v. Lacallo*, 2014 COA 78, ¶¶ 4-23, the Attorney General argues that because Leverton did not raise the issue of sufficiency in the trial court, we should review only for plain error. We need not resolve that issue here because we conclude that sufficient evidence supported Leverton's convictions. *People v. Sena*, 2016 COA 161, ¶ 8.

## A. Theft

¶ 57    "[A] person commits theft by receiving when he receives, retains . . . or disposes of anything of value of another, knowing or believing that said thing of value has been stolen, and when he intends to deprive the lawful owner permanently of the use or benefit of the thing of value." § 18-4-410(1), C.R.S. 2012.

¶ 58    A few days after the car had been reported stolen, the police found Leverton sitting in the car's front passenger seat.  Though Leverton told the police that the car had been given to him by the victim, his statement was directly refuted by the victim's testimony that she had never met him.  Evidence also was presented at trial that Leverton himself drove the vehicle to a gas station.

¶ 59    Based on all of this evidence, we conclude that the jury was entitled to infer that Leverton intended to permanently deprive the owner of the car of the rights of ownership.  Thus, sufficient evidence supported the theft by receiving conviction.

## B. Possession of Paraphernalia

¶ 60    "[A] person commits possession of drug paraphernalia if he or she possesses drug paraphernalia and knows or reasonably should know that the drug paraphernalia could be used under

24

circumstances in violation of the laws of this state." § 18-18-428(1)(a).

¶ 61 The prosecution presented evidence that, prior to placing Leverton into the police vehicle, a police officer searched the vehicle's back seat and found nothing. While Leverton was being transported to the police station, he was fidgeting. After removing Leverton from the vehicle, the officer discovered in the back seat where Leverton had been sitting a pipe of the sort commonly used to smoke methamphetamine. The pipe contained a white residue which the officer testified was consistent with methamphetamine.

¶ 62 Leverton argues that no jury rationally could have concluded that the pipe belonged to him because if he had had the pipe on his person, it would have been discovered when he was patted down before he was placed into the police vehicle. He also argues that the pipe could have belonged to the driver of the stolen car, who rode in the police vehicle with him. But the fact that the officer did not find the pipe during the pat-down search goes to the weight of the officer's testimony, an inquiry that is irrelevant in determining sufficiency. *Sprouse*, 983 P.2d at 778. And while the pipe might

have belonged to the other man, it was the jury's role to decide to whom the pipe belonged.

¶ 63     Viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence for the jury to convict Leverton of possession of drug paraphernalia.

## V.  Guilt by Association

¶ 64     Leverton also contends that "the trial court erred by allowing the prosecution to seek Mr. Leverton's convictions on the basis of guilt by association."  We have held that the prosecution presented sufficient evidence for the jury to conclude that every element of the charged crimes was proved beyond a reasonable doubt.  Leverton's convictions were not based on his association with other persons; they were based on evidence that proved that Leverton, not some other person, committed the crimes.

¶ 65     To the extent that Leverton asserts a back-door Fourth Amendment argument — that the police officer's search of the police vehicle after Leverton exited the vehicle was unreasonable — we reject it for two reasons: (1) it was not sufficiently developed and we do not address skeletal arguments, *People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003); and (2) it was not raised in the trial court

and thus was waived, *People v. Cordova*, 293 P.3d 114, 120 (Colo. App. 2011).

## VI. Conclusion

¶ 66    The judgment of conviction is affirmed.

JUDGE DAILEY and JUDGE J. JONES concur.