The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 30, 2022

**2022COA68**

**No. 18CA2337, *People v. Johnson* — Criminal Law —**
**Sentencing — Youth Offender System — Revocation**

As a matter of first impression in this direct appeal concerning the revocation of a youth offender's sentence, a division of the court of appeals determines the applicability and interplay of two provisions under section 18-1.3-407(5), C.R.S. 2021, the Youth Offender System (YOS) statute. Based on a plain reading of the statute's language, the division determines that subsection (5)(a) applies to a YOS sentence revocation only when the offender poses a danger to himself, herself, or others. Moreover, subsection (5)(c) identifies those categories of offenders whose original sentence must be reimposed for failing to successfully complete their YOS sentence — including an offender returned to the district court under subsection (5)(a).

COLORADO COURT OF APPEALS                                    **2022COA68**

Court of Appeals No. 18CA2337
Arapahoe County District Court No. 11CR568
Honorable Jeffrey K. Holmes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Schuyler Adonis Johnson,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE TAUBMAN*
Welling and Schutz, JJ., concur

Announced June 30, 2022

Philip J. Weiser, Attorney General, Paul E. Koehler, First Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Ryann S. Hardman, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1    Defendant, Schuyler Adonis Johnson, appeals the district court's order that revoked his six-year youth offender sentence and imposed a suspended sentence of eighteen years in the custody of the Department of Corrections (DOC). He contends that the district court erred by misapplying subsection (5)(c) of section 18-1.3-407, C.R.S. 2021, the Youth Offender System (YOS) statute. Johnson argues that because the district court did not return him to the YOS within sixty days following his detention in the county jail, as required by subsection (5)(a) of the YOS statute, the court improperly revoked his YOS sentence, which he says should have been deemed completed.

¶ 2    We conclude, however, based on a plain reading of the statutory language, that the district court correctly applied section 18-1.3-407(5)(c) to revoke Johnson's YOS sentence for failing to comply with its terms and conditions. In addition, we reject Johnson's other challenges to the revocation and thus affirm.

I.    Background

¶ 3    On August 24, 2012, after Johnson pleaded guilty to first degree assault, a district court sentenced him to six years in the YOS and an eighteen-year suspended sentence in the custody of the

1

DOC under section 18-1.3-407.[1] At the time, Johnson was eighteen years old.

¶ 4    About five years into his YOS sentence, Johnson started Phase III — the community supervised release portion of the program. Phase III allowed Johnson to live in his mother's basement while complying with certain terms and conditions. For example, the program required that Johnson report to his community parole officer to approve visitors, avoid using marijuana and alcohol, find employment, maintain curfew, periodically submit to certain drug tests, and continuously wear an ankle monitor.

¶ 5    However, because Johnson failed to comply with the terms and conditions of his YOS sentence, YOS held a suitability hearing and recommended that it be revoked; this decision was upheld by a review panel. Pursuant to section 18-1.3-407(5)(c), the YOS warden and the DOC executive director upheld the DOC's decision. Consequently, on August 29, 2018, the People moved to revoke

_____

[1] After being charged with multiple counts for shooting at two victims, including attempted first degree murder, Johnson pleaded guilty to first degree assault.

2

Johnson's YOS sentence and impose the suspended prison sentence.

¶ 6    Johnson's counsel moved to dismiss the People's complaint to revoke Johnson's YOS sentence. Defense counsel argued that Johnson had committed only technical violations and the district court had violated section 18-1.3-407(5)(a) by improperly holding Johnson in county jail after not taking action within sixty days.[2]

¶ 7    In response, the People argued that subsection (5)(a) applies to a YOS sentence revocation only when an offender poses a danger to himself, herself, or others and that Johnson did not. Instead, the People asserted, subsection (5)(c) applied to Johnson's YOS revocation because he failed to comply with the terms and conditions of his YOS sentence.

¶ 8    On October 26, 2018, following a hearing, the district court denied Johnson's motion to dismiss.

¶ 9    Defense counsel further argued that if the court agreed to revoke Johnson's YOS sentence, it was not required to reinstate his

_____

[2] We note, however, that police officers had already arrested and detained Johnson in county jail on potential new charges for having guns in his house.

3

original suspended sentence because it had discretion to choose any alternative sentence authorized by statute.

¶ 10    Based on the People's evidence, the district court found that Johnson had violated the conditions of his YOS sentence, and the statute required it to impose Johnson's suspended sentence of eighteen years in the custody of the DOC.  The court further explained that despite disagreeing that it had improperly held Johnson in county jail longer than sixty days, it nonetheless granted him additional presentence confinement credit (PSCC) in the event that it erred in considering that offenders serving "community supervision time" are ordinarily not entitled to PSCC. *See* § 18-1.3-407(2)(b).  Consequently, the district court revoked Johnson's YOS sentence and resentenced him to eighteen years in DOC custody with PSCC and mandatory parole.

¶ 11    Johnson timely appealed.

## II.    Discussion

¶ 12    Johnson contends that the district court erred by (1) misapplying section 18-1.3-407(5)(c) to revoke his YOS sentence and thereby not acting within the required sixty days after his detention in county jail; (2) improperly concluding that it was

statutorily required to reimpose his original suspended DOC sentence; and (3) abusing its discretion when it revoked his YOS sentence. We address and reject each of these contentions in turn.

### A. Standard of Review and Applicable Law

¶ 13    "Statutory interpretation involves questions of law, which we review de novo." *Mosley v. People*, 2017 CO 20, ¶ 15, 392 P.3d 1198, 1202; *see People v. Garcia*, 2016 COA 124, ¶ 6, 382 P.3d 1258, 1260 (applying de novo standard to determine whether, under section 18-1.3-407(2)(a)(I), a court may award a YOS offender PSCC at his initial sentencing).

¶ 14    Our goal in interpreting a statute is to give effect to the legislative intent. *People v. Vidauri*, 2021 CO 25, ¶ 11, 486 P.3d 239, 242. "To do so, we look to the statute's plain language and 'give its words and phrases their ordinary and commonly accepted meaning[s].'" *Howard v. People*, 2020 CO 15, ¶ 13, 458 P.3d 893, 897 (quoting *People v. Hoskin*, 2016 CO 63, ¶ 7, 380 P.3d 130, 133); *see Mosley*, ¶ 16, 392 P.3d at 1202 ("[A] statute must be read and considered as a whole," so that our interpretation provides a "consistent, harmonious, and sensible effect to all its parts." (citing *People v. Dist. Ct.*, 713 P.2d 918, 921 (Colo. 1986))). We also avoid

interpreting a statute in a manner "that would render any words or phrases superfluous or that would lead to illogical or absurd results." *People v. Cali*, 2020 CO 20, ¶ 16, 459 P.3d 516, 519 (citing *McCoy v. People*, 2019 CO 44, ¶ 38, 442 P.3d 379, 389)). If the statute's language is clear, then "we apply it as written" and look no further to other rules of statutory construction. *Howard*, ¶ 13, 458 P.3d at 897 (quoting *Munoz v. Am. Fam. Mut. Ins. Co.*, 2018 CO 68, ¶ 9, 425 P.3d 1128, 1130).

## B.   Analysis

### 1.   Section 18-1.3-407(5)(c)

¶ 15     The YOS statute allows youthful offenders[3] convicted of felonies as adults to serve their sentences in a facility separate from the DOC. *People v. Miller*, 25 P.3d 1230, 1231 (Colo. 2001) (referring to the YOS statute in its previous location at section 16-11-311, C.R.S. 2000). Youthful offenders under the YOS undergo highly structured and monitored community supervision. *Id.*; *see*

---

[3] The statute defines a "young adult offender" as a person who is at least eighteen years of age but younger than twenty at the time of the offense and under the age of twenty-one at the time of sentencing. § 18-1.3-407.5(3), C.R.S. 2021.

*People v. Martinez*, 2015 COA 33, ¶ 16, 350 P.3d 986, 989 (The YOS statute provides "a sentencing option for certain youthful offenders [in] a controlled and regimented environment." (quoting § 18-1.3-407(1)(a))).

¶ 16     If an offender fails to comply with the terms and conditions of his or her sentence, section 18-1.3-407(5) provides specific procedures to revoke a YOS sentence.

¶ 17     Subsection (5)(a) provides as follows:

> Except as otherwise provided by paragraph (b) of this subsection (5), the department of corrections shall implement a procedure for the transfer of an offender to another facility *when an offender in the system poses a danger to himself or herself or others.* The executive director of the department of corrections shall review any transfer determination by the department prior to the actual transfer of an inmate, including a transfer back to the district court for revocation of the sentence to the youthful offender system. *A transfer pursuant to this paragraph (a) shall be limited to a period not to exceed sixty days,* at which time the offender shall be returned to the youthful offender facility to complete his or her sentence or returned to the district court for revocation of the sentence to the youthful offender system. In no case shall an offender initially sentenced to the youthful offender system be held in isolation or segregation or in an adult facility for longer than sixty

consecutive days without action by the sentencing court.

§ 18-1.3-407(5)(a) (emphasis added).

¶ 18    Subsection (5)(c) states:

> The department of corrections shall implement a procedure for returning offenders who cannot successfully complete the sentence to the youthful offender system, or who fail to comply with the terms or conditions of the youthful offender system, to the district court. An offender returned to the district court pursuant to subsection (5)(a) of this section or because he or she cannot successfully complete the sentence to the youthful offender system for reasons other than a behavioral or mental health disorder or an intellectual and developmental disability, or because he or she fails to comply with the terms or conditions of the youthful offender system, shall receive imposition of the original sentence to the department of corrections.

§ 18-1.3-407(5)(c).

¶ 19    Johnson argues that his YOS sentence revocation is governed by subsection (5)(a) because it requires that (1) the DOC's executive director review "any transfer determination by the department" and (2) "[i]n no case shall an offender . . . be held . . . in an adult facility

8

for longer than sixty consecutive days without action by the sentencing court."[4]  We are not persuaded.

¶ 20     We conclude that the district court correctly applied subsection (5)(c) to revoke Johnson's YOS sentence, rather than subsection (5)(a).[5]

¶ 21     A plain and ordinary reading of the first sentence of subsection (5)(a) directs the DOC to implement a transfer procedure to another facility *when an offender in the system poses a danger to*

---

[4] Even if we assume that the DOC violated its statutory obligation to ensure Johnson had a district court hearing before being detained for more than sixty days, he received a remedy for such an alleged violation when the trial court granted Johnson credit for ten months of community supervision against his sentence that was not otherwise permitted by statute.  Thus, even though mootness is usually jurisdictional, *see Diehl v. Weiser*, 2019 CO 70, ¶ 9, 444 P.3d 313, 316, we need not address the People's contingent mootness argument concerning Johnson's requested relief for any technical violations of section 18-1.3-407(5)(a).

[5] Johnson's counsel also argued, although incorrectly, that Johnson had completed his YOS sentence on August 24, 2018, while being held in county jail.  That would only have been the case, however, had he successfully completed his YOS sentence.  *See People v. Martinez*, 2015 COA 33, ¶ 18, 350 P.3d 986, 989 (Under § 18-1.3-407(5)(c), offenders who cannot complete a YOS sentence "are not entitled to be discharged from YOS and their suspended DOC sentences are not complete.").  Also, Johnson's discharge date was tolled after he was arrested and held in county jail for allegedly violating the terms and conditions of his YOS sentence.  *Id.* at ¶ 19, 350 P.3d at 989.

*himself, herself, or others.* Thus, for subsection (5)(a) to apply to an offender's YOS sentence revocation, an offender must exhibit a danger to himself, herself, or others. It follows then that, when read in context and as a whole, the additional provisions of subsection (5)(a) referring to "any transfer determination" by the DOC are limited to those offenders who pose a danger to themselves or others. *See Mosley,* ¶ 16, 392 P.3d at 1202. The record does not support the conclusion that Johnson posed a danger to himself or others, and Johnson does not argue otherwise. Accordingly, we reject Johnson's contention that the last sentence of subsection 5(a) applies to all YOS sentences, and we conclude it applies only to transfers. Therefore, because subsection (5)(a) is inapplicable to Johnson's YOS sentence revocation, the district court did not improperly hold Johnson in county jail for more than sixty days when it concluded, instead, that subsection (5)(c) governed.

¶ 22    We also reject Johnson's argument that subsections (5)(a) and (5)(c) jointly apply to his YOS sentence revocation.[6] Although we

---

[6] Because we have previously concluded that subsection (5)(a) of the YOS statute does not apply to Johnson, we need not address his argument that under section 18-1.3-407(5)(c), revocation of an

have previously determined that subsection (5)(a) does not apply to Johnson's YOS revocation, we clarify the interplay between subsections (5)(a) and (5)(c). Section 18-1.3-407(5)(c) specifies procedures to revoke a YOS sentence and return an offender to the district court when the offender cannot successfully complete his or her sentence. *See Martinez*, ¶ 18, 350 P.3d at 989; *People v. Efferson*, 122 P.3d 1038, 1040 (Colo. App. 2005). Subsection (5)(c) identifies three categories of offenders for whom the district court must reimpose their original sentences to the DOC. The first category concerns an offender returned to the district court under subsection (5)(a). Under that subsection, after an offender has been transferred to another facility for up to sixty days, the offender must be returned to the youthful offender facility to complete his or her sentence or to the district court for revocation of his or her sentence to the YOS. The second category applies to an offender who cannot successfully complete a YOS sentence for reasons other than a behavioral or mental health disorder or an intellectual or

----

offender's YOS sentence must also follow the procedures of section 18-1.3-407(5)(a).

11

developmental disability. The third category applies to offenders, like Johnson, who fail to comply with the terms and conditions of their YOS sentences. *See People v. Valenzuela*, 216 P.3d 588, 592 (Colo. 2009) (a criminal statute defined three categories of an offense by using the word "or"); *People v. Boling*, 261 P.3d 503, 506 (Colo. App. 2011) (Each of a statute's four provisions were separated by a semicolon and "'or,' which is ordinarily assumed to demarcate different categories.").

¶ 23    Accordingly, because only the third category applies to Johnson, the district court was required to reimpose his original sentence to the DOC. As a result, Johnson was not returned to the district court under subsection (5)(a), and the reference in subsection (5)(c) to subsection (5)(a) is inapplicable to him.

## 2.    Mandatory Sentence

¶ 24    Johnson argues that the district court erred by concluding that it was required to reimpose his original suspended DOC sentence. We disagree.

12

¶ 25    We conclude that the district court properly determined that the YOS statute mandates reimposition of Johnson's original prison sentence.[7]

¶ 26    Johnson's reliance on *Fierro v. People*, 206 P.3d 460, 465-66 (Colo. 2009), is misplaced.  In that case, the provisions governing probation revocation under section 16-11-205(5), C.R.S. 2021, operated in conjunction with section 18-1.3-401(11), C.R.S. 2021, thus permitting a district court to resentence a defendant to any sentence that might originally have been imposed.  *Fierro*, 206 P.3d at 466.  In this case, however, we agree with a prior division of this court that section 18-1.3-407(2)(a)(II) requires the district court to impose the offender's original sentence after revoking his or her YOS sentence under subsection (5)(c).  *See Martinez*, ¶ 30 n.3, 350 P.3d at 992 n.3.

¶ 27    *Fierro* is further distinguishable because it concerned a defendant's probation revocation, whereas this case concerns

---

[7] In addition to the district court's discretionary award of PSCC under section 18-1.3-407(2)(b), we note that under section 18-1.3-405, C.R.S. 2021, Johnson was entitled to PSCC for the period he was confined pending his YOS revocation.  *See People v. Garcia*, 2016 COA 124, ¶ 18 n.1, 382 P.3d 1258, 1262 n.1.

Johnson's YOS revocation. The legislature's use of the word "shall" in section 18-1.3-407(2)(a)(II) signals a mandate to the district court to reimpose Johnson's original prison sentence upon revoking his YOS sentence. *See Garcia*, ¶¶ 13-14, 382 P.3d at 1261 (reasoning that using the words "shall" and "may" in the same statute indicates the legislature's intent that these words carry their ordinary meanings); *see also Howard*, ¶¶ 23-24, 458 P.3d at 899-900 (a defendant was ineligible for probation because the crime of violence statute itself dictates that probation is not an option).

¶ 28    Moreover, if the General Assembly had intended the district court to use its discretion to impose any sentence other than the original prison sentence after a YOS revocation, it could have said so.[8] *See Weinstein v. Colborne Foodbotics, LLC*, 2013 CO 33, ¶ 16, 302 P.3d 263, 267 (the legislature could have created remedies for

---

[8] We recognize the harsh impact on Johnson by revoking his six-year YOS sentence and imposing, instead, his original suspended eighteen-year DOC sentence. However, it is up to the General Assembly to amend the YOS statute to allow district courts to exercise their discretion when reimposing the original (suspended) prison sentence. *See Lobato v. State*, 2013 CO 30, ¶ 45, 304 P.3d 1132, 1144 ("It is not up to the court to make [public] policy or to weigh policy." (quoting *Town of Telluride v. Lot Thirty-Four Venture, L.L.C.*, 3 P.3d 30, 38 (Colo. 2000)).

LLC creditors but did not); *Howard*, ¶ 27, 458 P.3d at 900 (The legislature could have specifically included the probation statute under the direct file statute if it intended probation to be an option; "we will 'not read into a statute language that is not there.'" (quoting *Marsh v. People*, 2017 CO 10M, ¶ 62, 389 P.3d 100, 113)); *see also Cali*, ¶ 17, 459 P.3d at 519 (we neither add to nor subtract words from a statute); *Beren v. Beren*, 2015 CO 29, ¶ 11, 349 P.3d 233, 239 ("If different statutory provisions cannot be harmonized, the specific provision controls over the general provision.").

¶ 29    In sum, we see no error.

### 3.    Revocation of Johnson's YOS Sentence

¶ 30    Last, Johnson contends that the district court abused its discretion by revoking his YOS sentence.  We disagree.

### a.    Additional Background

¶ 31    On October 12, 2017, Johnson started Phase III, the community supervision stage of his YOS sentence.  About a month later, Johnson began having trouble complying with the terms and conditions of Phase III.  At his suitability hearing on July 13, 2018, Johnson's community parole officer reported that Johnson had failed to progress through the program.  During a span of about

seven months, Johnson violated Phase III's directives and lawful orders as follows:

- Johnson failed to notify his probation officer about being fired from his first job.

- He missed a total of nineteen urinalysis tests; of those he took, Johnson tested positive nine times for alcohol or marijuana, or both.

- Johnson violated curfew multiple times and once lied to his probation officer about leaving his house in the middle of the night.

- He failed to keep his ankle monitor continuously charged and to check in with his supervisors; the DOC then expended resources to make sure Johnson could be properly monitored.

- He had associated with a known felon before contacting his community parole officer to get permission to do so at his home.

¶ 32    At the time, Johnson also refused offers made by his parole officer and case manager to be driven to get tested and to find and

set up therapy and drug treatment. Johnson also testified at the hearing and admitted that he "messed up."

¶ 33 The DOC concluded that Johnson failed to progress through the YOS program in violation of Phase III, it recommended that Johnson's YOS sentence be revoked, and the DOC's executive director affirmed the decision.

¶ 34 On October 26, 2018, the district court held a hearing to determine whether to revoke Johnson's YOS sentence. Johnson's community parole officer testified as to Johnson's violations, and the district court revoked Johnson's YOS sentence based on the evidence supporting the DOC's decision to do so.

### b. Analysis

¶ 35 We review a district court's decision to revoke a YOS sentence for an abuse of discretion. *See Martinez,* ¶ 29, 350 P.3d at 991 (a district court retains discretion to dismiss a proceeding to revoke a defendant's YOS sentence). "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair." *Garcia,* ¶ 21, 382 P.3d at 1262; *People v. Fallis*, 2015 COA 75, ¶ 4, 353 P.3d 934, 935 (We assess whether a district court abused its

17

discretion by determining whether its "decision fell within a range of reasonable options.").

¶ 36 Johnson argues that the district court abused its discretion by revoking his YOS sentence because he had already completed most of the program and had only committed technical violations. We are not persuaded.

¶ 37 Based on the record, we conclude that the district court appropriately revoked Johnson's YOS sentence after conducting a hearing.[9]

¶ 38 The district court relied on the DOC's findings that Johnson had repeatedly violated Phase III's terms and conditions, despite being warned and had offered help to complete the program, which he declined. *Fallis*, ¶ 4, 353 P.3d at 935. Johnson himself admitted these violations. We also reject Johnson's argument that, as an adult, he could use alcohol and marijuana because they are not illegal. By signing the terms and conditions of his supervised release, Johnson agreed not to use these substances. *See, e.g.,*

---

[9] In conducting the hearing, the district court followed defense counsel's suggestion to proceed with Johnson's revocation determination in a manner "similar to a probation revocation."

*Efferson*, 122 P.3d at 1039-40 (the district court retained jurisdiction to revoke the defendant's YOS sentence for admittedly using alcohol and marijuana in violation of its terms and conditions).

¶ 39    Therefore, we see no error.

### III.    Conclusion

¶ 40    The district court's order is affirmed.

JUDGE WELLING and JUDGE SCHUTZ concur.